UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ANNE YERED, MD, )<br>)<br>       Plaintiff, )<br>)<br>v. )<br>)<br>EASTERN MAINE HEALTHCARE )<br>SYSTEMS and NORTHERN LIGHT )<br>EASTERN MAINE MEDICAL CENTER, )<br>)<br>       Defendants. ) | 1:23-cv-00284-SDN |

## **ORDER ON MOTION TO COMPEL**

This matter comes before the Court on Plaintiff Dr. Anne Yered's objection to the Magistrate Judge's discovery order. On December 23, 2025, the Magistrate Judge denied Plaintiff's motion to compel the medical records of a nonparty minor patient. ECF No. 107 ("the Discovery Order"). On December 30, 2025, Plaintiff filed an objection, arguing the Magistrate Judge erred when he determined she was not entitled to the records. ECF No. 108. The Court has reviewed the Order and finds it is neither clearly erroneous nor contrary to law. The Discovery Order is **AFFIRMED**.

### I.  Background[1]

In June 2017, Defendants Eastern Maine Healthcare Systems and Northern Light Eastern Maine Medical Center hired Dr. Yered as a pediatric critical care physician in the pediatric intensive care unit ("PICU"). ECF No. 1-1 at 3. At that time, the hospital employed four pediatric intensivists; three (including Dr. Yered) held board certifications

---

[1] These facts are drawn from the Complaint, ECF No. 1-1. *See Plourde v. Lewis*, No. 1:23-CV-00323, 2025 WL 2723554, at *5 (D. Me. Sept. 24, 2025).

1

in pediatric critical care. *Id*. at 5. The fourth, Dr. P., is board certified in pediatrics but not in pediatric critical care. *Id*.

In September 2019, Dr. Yered responded to the hospital in the middle of the night after an error occurred during the treatment of a pediatric patient that endangered the child's life. *Id*. at 8. Upon arrival, she engaged in a verbal altercation with two male doctors at the patient's bedside. *See id*. at 9. Dr. Yered alleges one doctor "verbally assaulted" her and called her names. *Id*. Afterwards, Dr. Yered emailed Dr. W., the senior lead physician, and Dr. P., the PICU's medical director, voicing concerns about the "poor quality of medical care" and alleging the male doctors' treatment of her constituted sex discrimination. *Id*. She again complained to supervisors in March 2020 regarding a proposal for pediatricians to care for critically ill adult patients. *Id*. at 11.

In July 2020, the PICU sought candidates for the role of Chief of Service. *Id*. at 12. Dr. Yered and another female doctor applied, but the hospital selected a male doctor. *Id*. In a meeting with two senior physicians, Dr. Yered alleged gender influenced the selection. *Id*. at 12–13. She requested that the hospital convene an anti-discrimination panel to examine any biases underlying the selection. *Id*. at 13. She also reported that Dr. P.'s lack of board certification in pediatric critical care endangered patient safety. *Id*. at 14.

Dr. Yered argues Defendants retaliated against her for these complaints by altering her schedule, threatening her employment, mocking her appearance, and denying her request for part-time hours. *Id*. at 14–16. She continuously reported these actions to human resources ("HR") as well as her superiors. *Id*. at 15. She asserts these complaints constitute protected activity under the Maine Human Rights Act ("MHRA"), 5 M.R.S.

§ 4551, *et seq.*, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Maine Whistleblowers' Protection Act ("WPA"), 26 M.R.S. § 833, *et seq.* ECF No. 1-1 at 10.

In June 2021, the hospital retained an attorney to investigate the allegations. *Id*. at 18. Dr. Yered declined an in-person meeting but sent the attorney an email describing her allegations. *Id*. at 19–20. On July 15, 2021, the hospital terminated Dr. Yered, citing in part "inappropriate communications" with colleagues and HR and her refusal to participate in the investigation. *Id*. at 21, 23. Dr. Yered alleges this characterization constitutes a tacit admission that she was terminated for protected whistleblowing activity. *Id*. at 24. On July 21, 2024, Dr. Yered brought suit. *Id*. at 1.

On October 31, 2025, Dr. Yered moved to compel disclosure of medical records and incident reports regarding a child who had died in the PICU in 2017.[2] ECF No. 99 at 1. She alleges the records would prove the truth of her whistleblower claim that Dr. P. endangered patients in part because he is not board certified in pediatric critical care. *Id*. at 2. She also requested a qualified protective order for in camera review or de-identified production of the records. *Id*. at 4–5. Defendants opposed disclosure of the records, arguing the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6, and Maine law, 22 M.R.S. § 1711-C(2), protect the records. ECF No. 103 at 5–6. They also contend the records are irrelevant because Dr. P. was not the patient's attending physician, Dr. Yered did not claim misconduct regarding the patient's death, and Dr. Yered did not know about the death at the time she complained to the hospital about her concerns. *See id*. at 8–9.

---

[2] Specifically, Dr. Yered sought physician orders and nursing notes, vital signs and monitoring records, imaging and diagnostic test results, medication administration records, a death summary and notes, incident reports and internal reviews involving the patient's care, and "[a]ny and all documentation leading up to and including the child's arrest and including the code event." ECF No. 105-3 at 1.

3

On December 23, 2025, the Magistrate Judge denied Dr. Yered's motion to compel. ECF No. 107. The Magistrate Judge questioned the relevance and probative value of the records, in part because "Plaintiff does not allege that she reported concerns about the patient's care as part of her protected whistleblower activity." *Id.* at 2. Dr. Yered now objects, claiming the Discovery Order is clearly erroneous and misapplies HIPAA and the relevancy standard in Federal Rule of Civil Procedure 26. ECF No. 108 at 1.

## II. Analysis

Under Federal Rule of Civil Procedure 72(a), for non-dispositive orders, the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard requires the Court to accept the Magistrate Judge's factual findings unless, after reviewing the record, the Court is left with a "strong, unyielding belief that a mistake has been made." *Green v. Cosby*, 160 F. Supp. 3d 431, 433 (D. Mass. 2016) (citing *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999)). The Court reviews pure questions of law de novo, *see PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010), and questions of fact for clear error, *Phinney*, 199 F.3d at 4. Mixed questions of law and fact require a "sliding standard" of review: the level of deference increases as the question becomes more fact-intensive. *In re IDC Clambakes, Inc.*, 727 F.3d 58, 64 (1st Cir. 2013).

Dr. Yered contends the Magistrate Judge erroneously used HIPAA as a categorical bar rather than utilizing a qualified protective order to order production of the discovery.[3]

---

[3] Pursuant to HIPAA's regulations, 45 C.F.R. § 164.512(e)(1) provides that "covered entit[ies]" such as Defendants "may disclose protected health information" in response to "an order of a court" or in response to a "discovery request" if they "receive[] satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order."

4

ECF No. 108 at 2. HIPAA does not create a federal hospital-patient or physician-patient privilege, however. *See Polk v. Swift*, 339 F.R.D. 189, 195 (D. Wyo. 2021) (collecting cases). Because HIPAA is procedural, it does not override the rules of civil procedure. *See BNSF Ry. Co. v. Lafarge Sw., Inc.*, No. CIV 06-1076, 2008 WL 11322949, at *5 (D.N.M. May 9, 2008). Plaintiff's request is governed by Federal Rule of Civil Procedure 26, which permits discovery of any nonprivileged, relevant, and proportional matter. Fed. R. Civ. P. 26(b)(1).

To prevail on a claim under the WPA,[4] the Plaintiff must show she engaged in protected activity, suffered an adverse employment action, and that a causal link exists between the two. *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 349 (1st Cir. 2018). The Discovery Order properly doubted the relevance of the records because Plaintiff "does not allege that she reported concerns about the patient's care as part of her protected whistleblower activity," "did not witness and has no personal knowledge of the care administered to the patient," and was not yet employed at the hospital in 2017 when the patient's death occurred. ECF No. 107 at 2. In rejoinder, Plaintiff notes that "senior physicians discussed the death with her during onboarding," "a specialist allegedly stated the case was mismanaged," and her general safety concerns involved leadership and a lack of mortality reviews. ECF No. 108 at 4.

This case does not concern the merits of patient care; the issue is whether Defendants retaliated against for Dr. Yered for her whistleblower complaints. However, Plaintiff fails to show the relevance of the discovery. *See In re Subpoena to Witzel*, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26 advisory comm. note—2000

---

[4] Neither the Discovery Order nor the Plaintiff's objection discuss the MHRA and Title VII claims; thus, the Court does not address them here.

amend.) ("[W]hen an objection arises as to the relevance of discovery," it becomes the job of the court "to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it, so long as it is relevant to the subject matter of the action."). Whether Dr. P. mishandled the patient's care does not dictate whether Plaintiff satisfies the elements of a whistleblower claim. Dr. Yered seeks "production for the limited purpose of confirming involvement [of PICU leadership], escalation decisions, consults, and review documentation." ECF No. 108 at 4. That justification undermines her argument for relevance; it indicates that the records are intended to substantiate a claim of medical mismanagement rather than to ascertain whether Dr. Yered engaged in protected activity. In a retaliation claim, the inquiry focuses on whether the Plaintiff's beliefs were "reasonably held" based on information known to her at the time of the complaint. *Selassie v. United Health Servs. Hosps., Inc.*, No. 05-CV-0207, 2005 WL 8170806, at *5 (N.D.N.Y. July 27, 2005). As the Magistrate Judge explained, the patient's records have minimal probative value because Plaintiff's complaints did not rely on that alleged misconduct. To the extent Plaintiff argues the records help to establish her claim that Dr. P. provided substandard medical care, the Complaint alleges numerous reports to her superiors predicated on his lack of board certification. *See* ECF No. 1-1 at 14. It does not, however, contend she complained about Dr. P.'s actions on the night of the patient's death—despite knowing about the child's death and Dr. P.'s role as the attending physician prior to her employment at the hospital.[5] *See* ECF No. 104-1 at 37:1–15.

---

[5] While the Court agrees that a whistleblower need not personally witness reported misconduct, *see* ECF No. 108 at 3, no evidence suggests her reports were predicated on this patient's death.

6

In evaluating the disclosure of patient records under HIPAA, courts prioritize patient privacy when evaluating HIPAA disclosures. *See, e.g.*, *Hussein v. Duncan Reg'l Hosp., Inc.*, No. CIV-07-0439, 2009 WL 10672479, at *2 (W.D. Okla. Apr. 28, 2009) ("Strict limitations are necessary here because the patients in question could not have anticipated that their records would be produced in the circumstances of this action . . . ."); *Law v. Zuckerman*, 307 F. Supp. 2d 705, 711 (D. Md. 2004) ("It is clear there is strong federal policy in favor of protecting the privacy of patient medical records."). Proportionality requires the Court to consider if the information is available through less burdensome sources. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Other courts have rejected disclosure of patient records where the plaintiff failed to address whether they could obtain material supporting their claim "without reference" to HIPAA documents. *Mawulawde v. Bd. of Regents of Univ. Sys. of Ga.*, No. CV 105-099, 2006 WL 8429928, at *10 (S.D. Ga. Apr. 27, 2006). Courts also deny such requests when a plaintiff could "narrow the scope through less intrusive means" such as depositions of other medical professionals or the hospital's HR director, or reviews of personnel files. *Kapp v. Jewish Hosp., Inc.*, No. 09-CV-949, 2011 WL 2669457, at *6 (S.D. Ohio July 7, 2011).

The Discovery Order found Plaintiff's discovery requests were disproportionate. ECF No. 107 at 1. Even if Dr. P.'s care was relevant to Dr. Yered's whistleblower claim, non-HIPAA protected documents, such as Dr. P.'s performance reviews, would more appropriately serve the inquiry.[6] Where disclosure of private information outweighs potential benefits, the Court must deny a motion to compel. *See Polk*, 339 F.R.D. at 200.

---

[6] Dr. Yered argues the Discovery Order applied an erroneously heightened relevancy standard by stating "[w]here the privacy rights of another individual are implicated, more than a mere suspicion must be present to establish the relevance of the records." ECF No. 107 at 3. But Plaintiff also admits courts must "consider least-intrusive alternatives" and "narrower[] protective mechanisms" where sensitive patient

## III.   Conclusion

Accordingly, the Court **AFFIRMS** the Magistrate Judge's Discovery Order, ECF No. 107, and **DENIES** Plaintiff's Motion to Compel, ECF No. 99.

**SO ORDERED.**

Dated this 23rd day of February, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

---

information is implicated. ECF No. 108 at 2–3. As explained above, a narrower alternative exists through access to non-HIPAA protected documents. The Magistrate Judge did not err by finding that Plaintiff failed to demonstrate appropriate relevancy and proportionality.